IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ROMEO HARDIN,

    Plaintiff,

vs.

WILLIAM SPERFSLAGE, *et al.*,

    Defendants.

No. C19-0040-LTS

**MEMORANDUM OPINION AND ORDER**

_____

## I. INTRODUCTION

This matter is before me on a motion (Doc. 10) for summary judgment filed by defendants. Plaintiff Romeo Hardin filed a resistance (Doc. 12), along with a motion (Doc. 11) to appoint counsel. Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

Hardin mailed the original complaint (Doc. 1-1), along with a motion (Doc. 1) to proceed in forma pauperis, on March 23, 2019.[1] I subsequently entered an order (Doc. 2) stating that Hardin's motion to proceed in forma pauperis failed to comply with 28 U.S.C. § 1915(a). I gave him 30 days to file an amended motion to proceed in forma pauperis. I also noted that Hardin's complaint failed to state a claim on which relief could be granted and gave him 30 days to file an amended complaint. Hardin then filed

---

[1] Hardin's original complaint is dated March 23, 2019, but the postage mark on the envelope is April 3, 2019. Doc. 1-1 at 1-3. The original complaint was docketed on April 11, 2019. Under the "prison mailbox rule," a prisoner's § 1983 Complaint is deemed "filed" when he places it in the prison's internal mail system. *Sulik v. Taney County*, 316 F.3d 813, 815 (8th Cir. 2003), *rev'd on other grounds*, 393 F.3d 765 (8th Cir. 2005). I will assume that Hardin placed the complaint into the prison mail system on the day he dated it, March 23, 2019.

an amended motion (Doc. 3) to proceed in forma pauperis and amended complaint (Doc. 3-1).

On July 14, 2021, I entered an order (Doc. 4) granting Hardin's motion to proceed in forma pauperis and, after initial review, allowing his case to proceed. Defendants filed an answer (Doc. 7) on September 13, 2021. They filed a motion (Doc. 10) for summary judgment, along with a statement of facts (Doc. 10-2) and an appendix (Doc. 10-3), on January 18, 2022. On January 21, 2022, Hardin filed a motion (Doc. 11) to appoint counsel. On February 4, 2022, Hardin filed a resistance to the motion for summary judgment. Doc. 12. He also filed a pro se statement of facts (Doc. 13). On September 22, 2022, Hardin filed a document (Doc. 16) in which he stated he has been denied access to his facilities' law library, renewed his request for counsel and asked for a 90-day continuance.

### III. RELEVANT FACTS

Hardin's statement of facts (Doc. 13) does not comply with rules in so far that he neither disputes defendants' individual statement of facts nor cites to any documentation in his own statement of facts. "[A] failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." Local Rule 56(b); *see also* Fed. R. Civ. P. 56(e). Therefore, I will treat as admitted all of the facts set forth in defendants' statement. Those facts will be summarized below in the "Undisputed Facts" section of this order.

#### A. *Allegations in the Amended Complaint*

Hardin makes three claims in his amended complaint (Doc. 5). The first is that he was subject to unconstitutional retaliation after he sought release following a favorable court decision. Specifically, Hardin is serving a life sentence for a murder he committed as a juvenile. He is now eligible to seek parole. *See State v. Hardin*, 908 N.W.2d 882

(Iowa Ct. App. 2017). He claims that defendants retaliated against him after he sought parole by filing grievances against him and confining him in solitary confinement.

Second, Hardin alleges he was involved in a sexual relationship with defendant Brehm, who was an employee of the prison. As noted in my prior order, I understand that to be a claim that Brehm violated Hardin's right to be free from cruel and unusual punishment.[2] Third, Hardin alleges a second claim of retaliation, asserting that he was exercising a protected right (using the prison grievance system regarding the alleged relationship with Brehm) and that he was disciplined and put in solitary confinement.

## B.  *Undisputed Facts*

Hardin is an inmate in the Iowa Department of Corrections (IDOC). He was housed at Anamosa State Penitentiary between October 14, 2015, and October 4, 2017. Hardin was sentenced as a juvenile to life in prison without the possibility of parole. After changes in the law concerning life sentences for juveniles, Hardin's case was extensively litigated. Ultimately, the Iowa Supreme Court remanded Hardin's criminal case for resentencing on September 16, 2016. On April 12, 2017, Hardin was resentenced to life in prison with the possibility of parole. Doc. 10-3 at 11-12.

Pursuant to the IDOC grievance policy, an inmate must complete a number of steps in order to exhaust remedies: (1) seek informal resolution prior to filing an actual grievance; (2) following an adverse grievance decision, appeal the grievance response to the Warden at the institution where the offender is incarcerated; and (3) if still dissatisfied with the grievance appeal response, take an additional appeal to the Iowa Department of Corrections Central Office. Only a response from that final appeal will complete exhaustion of the administrative process. *See* Doc. 10-3 at 73-76. The grievance policy

---

[2] *See* Doc. 4 at 6, citing *Williams v. Prudden*, 67 F. App'x 976, 977 (8th Cir. 2003) (unpublished) ("[Plaintiff] did, however, sufficiently state an Eighth Amendment claim by alleging that [prison official] forcibly ground his pelvis against her, grabbed her breast, verbally demanded sexual favors, made physical sexual advances, and attempted to force himself upon her."); *see also* 42 U.S.C. 1997e(e).

lists issues that may be grieved. Specifically, "[o]ffenders may grieve policies, conditions, loss or damage of personal property with value of less than $100.00 (with proof of purchase/ownership), health care treatment, employees, and other offenders within the institution that affect them personally." Doc. 10-3 at 70-71. If offenders grieve "Parole Board [decisions], disciplinary process, classification decisions, work release decisions, publication review, visiting decisions, religious issues" those grievances will be returned as "non-grievable" because there are alternative appeal procedures. *Id*.

Some grievance issues are routed for outside investigation. For example, "[a]llegations of offender on offender sexual abuse or sexual assault or staff, contractor or volunteer sexual misconduct or sexual harassment, or retaliation." Doc. 10-3 at 71-72. If those issues are included in a grievance, the grievance officer sends it to the Administrator of the Division of Investigative Services in the Central Office for investigation. *Id*.

Hardin has filed four grievances potentially relevant to this case. On January 12, 2017, he filed a grievance (31707) in which he argued IDOC's continued enforcement of his vacated sentence was illegal. Hardin believed the IDOC was required to release him from prison. After that grievance was denied, he appealed it to the Warden, where it was again denied. Doc. 10-3 at 14-21. There is no indication that Hardin appealed 31707 to the final appellate level at the IDOC central office. Doc. 10-3 at 83.

On June 8, 2017, Hardin filed a grievance (33004) in which he argued an investigator improperly handled some of the classified information related to the sexual assault investigation. IDOC officials denied grievance 33004, finding the confidential materials were properly secured. Doc. 10-3 at 52-58. There is no indication that Hardin appealed 33004 to the final appellate level at the IDOC central office. Doc. 10-3 at 83.

On June 10, 2017, Hardin filed a grievance (33050) in which he claimed defendant Babbe denied him proper medical care when, in part, she refused to discuss his sexual assault allegations. IDOC officials denied 33050, finding it was not a grievable issue.

4

Doc. 10-3 at 59-63. There is no indication that Hardin appealed 33050 to the final appellate level at the IDOC central office. Doc. 10-3 at 83.

On June 8, 2017, Hardin filed a grievance (33395) in which he argued IDOC had improperly held him at ASP after his sentence was vacated, stating he should have been placed at the Iowa Medical and Classification Center (IMCC). IDOC officials denied 33395, finding that inmates are not sent to the IMCC following resentencing. Doc. 10-3 at 64-67. There is no indication that Hardin appealed 33050 to the final appellate level at the IDOC central office. Doc. 10-3 at 83. Other than the grievances listed above, there is no information in the record that Hardin filed grievances related specifically to either retaliation or that any of the IDOC employee defendants engaged in the activities that Hardin alleges amounted to retaliation.

Hardin was the subject of a Prison Rape Elimination Act (PREA) investigation beginning on April 2, 2017, after Hardin made the allegation that Brehm engaged in inappropriate sexual contact with him. Doc. 10-3 at 22. Hardin alleged that at least one instance of the sexual contact occurred on March 30, 2017. *Id*. On May 24, 2017, following the PREA investigation, Investigator Randy Hanssen initiated a disciplinary action against Hardin because the investigation determined the allegations he made against Brehm were false. Doc. 10-3 at 81. Hardin was found guilty of multiple IDOC rule violations as a result of making false allegations against Brehm. The ALJ decision, dated May 31, 2017, has not been overturned. Doc. 10-3 at 26-27, 30.

Hardin was first placed in administrative segregation status on April 3, 2017, for mental health observation. Doc. 10-3 at 81. On April 13, 2017, Hardin's status changed to "Investigative Segregation," a status commonly used for inmates involved in ongoing PREA investigations. *Id*. His status remained unchanged throughout the remainder of the PREA investigation process. *Id*. Hardin was then held in administrative segregation status until staff was able to speak with Brehm about placing him back in the general population. *Id*. But when IDOC staff met with Hardin about moving him out of administrative segregation, he refused to cooperate. *Id*. He was held in administrative

5

segregation until July 13, 2017, because he continued to exhibit concerning behavior regarding Brehm. *Id*. at 82.

On July 13, 2017, he was moved to disciplinary detention status. *Id*. On July 17, 2017, IDOC moved Hardin back to administrative segregation status based on the need to assess the safety of Brehm. *Id*. His status remained unchanged until July 30, 2017, when he was placed on mental health observation status due to concerns about self-harm. *Id*. Hardin was released to the general population on August 3, 2017, when his self-harm issue resolved, but he was placed back in mental health segregation on August 29, 2017, when he reported feeling panicky and out of touch. *Id*. He was returned to the general population two days later, on August 31, 2017. *Id*.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence

that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## V. DISCUSSION

Defendants make three arguments in moving for summary judgment. I will consider each argument in turn.

### A. *Statute of Limitations*

42 U.S.C. § 1983 claims are governed by the relevant state's personal injury statute of limitations. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985). In Iowa, § 1983 actions are subject to a two-year statute-of-limitations. *See* Iowa Code § 614.1(2). In his amended complaint, Hardin alleges the instances of retaliation occurred between April and August 2017. Doc. 5 at 8. Hardin does not provide any dates related to the alleged inappropriate sexual relationship with Brehm.

> In their motion for summary judgment, defendants argue that Hardin's:
>
> claims [are] barred by the applicable statutes of limitations to the extent they relate to allegations of misbehavior occurring more than two years prior to the filing of his initial Complaint in this case. Plaintiff's initial complaint in this case was filed on April 11, 2019. *See* Docket No. 1. The evidence supplied by Defendants reveals a PREA investigation into Plaintiff's allegations against Brehm had begun by April 2, 2017, after which point he was placed in administrative segregation.

Doc. 10-1 at 10. However, based on my previous prison mailbox rule finding, Hardin's complaint was filed on March 23, 2019. The only date provided in the record for the alleged sexual abuse is March 30, 2017, which is within two years of March 23, 2019, as is the April to August 2017 time frame in which Hardin alleges the retaliation occurred. Thus, to the extent defendants move for summary judgment based on the statute of limitations, that motion is denied.

8

## B. *Heck v. Humphrey*

Defendants allege that Hardin's claim that he was sexually abused by Brehm is *Heck* barred. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court stated:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. The principle set out in *Heck* has been extended to several other situations. Relevant to this case, *Heck* has been extended to final determinations in prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("We conclude, therefore, that respondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the [prison disciplinary] decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."); *see also Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002) ("Habeas corpus, not § 1983, is the exclusive federal remedy when a state prisoner seeks restoration of good time credits taken away by a prison disciplinary proceeding.").

Defendants argue:

> In this case, Plaintiff was found guilty of multiple rule violations in a prison disciplinary hearing, premised upon a finding that his allegations of sexual contact with Defendant Brehm were untrue. That prison disciplinary ruling led to a loss of good time credits, and has not been invalidated. Thus, any ruling in Plaintiff's favor in this case on claims related to alleged sexual contact with Defendant Brehm would necessarily imply the invalidity of his prison disciplinary ruling, in violation of the central tenet set forth in *Heck*.

Doc. 10-1 at 9. In response, Hardin cites *Hardin v. Fullenkamp*, No. CIV. 4-99-CV-80723, 2001 WL 1662104 (S.D. Iowa June 22, 2001). Doc. 12 at 2. In that case Hardin was the plaintiff and the defendants argued that *Heck* barred his § 1983 excessive force claims because he had been convicted of assaulting a corrections officer related to the same incident. *Hardin*, 2001 WL 1662104 at 11. The court found that *some* of his

9

claims were not *Heck* barred because a finding in Hardin's favor on those claims would not necessarily call into question the validity of his related prison disciplinary conviction for assaulting an officer. *Id*. The court stated that it would "not consider any facts in support of Hardin's excessive-force claim that would call into question the validity of the disciplinary judgment against him," but found that it "could find that officers used excessive force in the manner they used to restrain Hardin, without also contradicting the disciplinary committee by finding he did not assault an officer."

This situation is different. Hardin's claim is that he was sexually abused by Brehm. *See* Doc. 5 at 8-9. However, in the disciplinary proceeding, the IDOC concluded that Hardin lied and filed "a false PREA" in an attempt to get Brehm "in trouble." Doc. 10-3 at 27. Any finding in this case that Brehm sexually abused Hardin would necessarily call into question the findings of the IDOC. For that reason, Hardin's claim related to Brehm is *Heck* barred and must be denied.

## C. Exhaustion

Defendants argue that Hardin's remaining claims must be denied because he failed to exhaust the available administrative remedies. Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory for all suits about prison life, and it is a prerequisite to bringing a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). This exhaustion requirement applies regardless of whether administrative procedures provide the prisoner relief. *Booth v. Churner*, 532 U.S. 731, 741 (2001). "An inmate satisfies § 1997e(a) by pursuing 'the prison grievance process to its final stage' to 'an adverse decision on the merits.'" *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quoting *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)). Defendants state:

> The evidence provided by Defendants establishes that there is a formal grievance process available in the Iowa prison system, which was available to Plaintiff. The evidence further establishes that while Plaintiff has availed himself of that formal grievance process many times, he only filed four grievances which concern (even tangentially) the facts alleged in his Amended Complaint. But even assuming those four grievances covered all of the factual allegations contained in Plaintiff's Amended Complaint, he did not fully exhaust any relevant grievance by completing the final level appeal to the IDOC Central Office. As a result, Plaintiff did not exhaust the administrative remedies available to him by way of the grievance procedures, and his claims are barred.

Doc. 10-1 at 8.

In response, Hardin quotes the portion of the IDOC procedures related to grievances and states, "[i]t is clear that the grievance process is not an available administrative remedy for incidents of staff sexual misconduct, retaliation or classifications with appeal mechanism." Doc 12 at 1. According to Hardin, this shows there was not an available administrative remedy for him to exhaust regarding his claims of retaliation and sexual abuse. *Id*. at 1-2. Hardin also argues that it should not have been his responsibility to file the final level appeal because, he alleges, the rules state the grievance "will be sent" to the administrator at the central office automatically. *Id*. at 2.

Hardin misreads the IDOC procedures. The policy states that "[o]ffenders, regardless of physical condition, security, or administrative status, shall follow this process to file grievances." Doc. 10-3 at 69. Issues that may be grieved include any issue an inmate may have with an IDOC "employee." *Id*. at 70. It is true that once a grievance is submitted to the grievance officer, the grievance officer must determine if the grievance relates to sexual abuse or retaliation, and that determination will impact further process. *Id*. at 72. Specifically, "if an offender submits a complaint to the grievance officer [regarding those issues], it will be sent to the Administrator of the Division of Investigative Services in Central Office for investigation." *Id*. However, nothing in the record suggests that having those specific types of issues (sexual abuse or

11

retaliation) would relieve an inmate from having to exhaust the grievance process before filing a § 1983 suit.

Thus, Hardin is required by 42 U.S.C. § 1997e(a) to exhaust the IDOC grievance procedure outlined above before proceeding with this suit. The undisputed evidence in the record shows Hardin has not made specific grievances related to his claims of retaliation. And, as noted both above, even if I were to assume that the grievances he did file encompassed all of the claims set out in the amended complaint, Hardin still failed to exhaust his administrative remedies because he never sought the final level of review for any of his grievances. For that reason, defendants are correct that Hardin has failed to exhaust his administrative remedies and his remaining claims must be denied.

## VI. CONCLUSION

For the reasons set forth herein:

1. Defendants' motion (Doc. 10) for summary judgment is **granted** as to all claims asserted by Hardin. Those claims are **denied** and this case is **dismissed**.
2. Because this dismissal is based on *Heck* and a failure to exhaust administrative remedies. it is **without prejudice**.
3. Hardin's motion (Doc. 11) to appoint counsel is **denied** as moot.
4. To the extent Hardin's recent filing (Doc. 16) requests a 90-day continuance, that request is **denied** as moot.[3]

---

[3] If Hardin's recent filing (Doc. 16) is an attempt to add an additional claim to this case that he has been denied access to the courts, it is also denied without prejudice. Hardin is currently incarcerated at the Iowa State Penitentiary in Fort Madison, Iowa, which is located in the Southern District of Iowa. Any claim that his rights have been violated by defendants in that institution must be brought in the federal court for that district.

**IT IS SO ORDERED.**

**DATED** this 30th day of September, 2022.

_____
Leonard T. Strand, Chief Judge

13